DATE FILED: March 31, 2022 4:34 PM
FILING ID: 23925CD8142CA
CASE NUMBER: 2022CV30001

| | |
|---|---|
| DISTRICT COURT, COUNTY OF SAN JUAN<br>1557 Greene Street<br>Silverton, CO 81433<br>Phone: 970-387-8040 | |
| San Juan Associates, Outdoor World, LLLP,<br>a Colorado Limited Liability Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>Depositors Insurance Company, an Iowa corporation<br><br>Defendant. | ▲COURT USE ONLY▲ |
| **ATTORNEYS FOR PLAINTIFF:**<br><br>Thomas W. Henderson, Reg. No. 16892<br>Nelson P. Boyle, Reg. No. 39525<br>Burg Simpson Eldredge Hersh & Jardine, P.C.<br>40 Inverness Drive East<br>Englewood, Colorado, 80112<br>Phone No.:   (303) 792-5595<br>Fax No.:      (303) 708-0527<br>Email:         thenderson@burgsimpson.com<br>                    nboyle@burgsimpson.com | Case No.<br><br>Ctrm/Div: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, San Juan Associates Outdoor World, LLLP, a Colorado Limited Liability Partnership, by and through its undersigned counsel, herewith states and avers the following as its Complaint and Jury Demand against Defendant, Depositors Insurance Company, an Iowa corporation:

## I.   Preliminary Statement

1.   The Outdoor World has been in business selling sporting goods at 1234 Greene Street in Silverton, Colorado since 1974, and as such has been Silverton's longest operating retail business in recorded history. The second floor of the Outdoor World building has been used as a residence since the building was constructed in 1972. This all stopped when, on December 21, 2019, a fire at the Great Divide property next door caused significant damage to the Outdoor World building, the finishes and property inside, and to Outdoor World's inventory. In their effort to get

back in business as soon as possible and so the principal of Outdoor World and his family could resume living on the second floor, Outdoor World promptly filed and pursued an insurance claim with its own insurer, Depositors Insurance Company ("Nationwide").

2.  As the Outdoor World was nearing completion of the construction necessary to repair the extensive fire damage to the Outdoor World building, the repairs to the Great Divide (where the fire started) were also progressing. Outdoor World and its repair contractor observed the south wall of the Great Divide, an unreinforced masonry wall, was leaning into and contacting the adjacent north wall of Outdoor World, and then observed cracking of the newly installed drywall walls and some ceilings at the second floor of Outdoor World. This new damage led to Outdoor World filing a second claim with Nationwide.

3.  After accepting the second claim and hiring an engineer that agreed the cause of the new damage at the Outdoor World building was the pressure from the south Great Divide wall pushing against the north Outdoor World wall, and after Nationwide learned of the significant cost to repair the new damage, Nationwide then hired a different engineer and changed its position to denying the majority of Outdoor World's claim. This denial has prevented Outdoor World from making the necessary repairs so it could safely reopen for business and prevented the second floor from being safely used as a residence.

## II.    Parties

4.  Plaintiff, San Juan Associates , Outdoor World, LLLP, a Colorado Limited Liability Partnership (hereinafter, "Outdoor World") with its principal place of business located in San Juan County at 1234 Greene Street, Silverton, Colorado.

5.  Defendant, Depositors Insurance Company (hereinafter ,"Nationwide"), is an Iowa corporation that is authorized to transact insurance business in Colorado.

## III.   Jurisdiction and Venue

6.  This Court has subject matter jurisdiction over this action pursuant to the Constitution of the State of Colorado, Article VI, Section 9, as the court of general jurisdiction for the State of Colorado.

7.  This Court has personal jurisdiction over Nationwide because it is authorized to transact insurance business and does transact insurance business in Colorado.

8.  Venue is proper in the County of San Juan pursuant to C.R.C.P. 98(c)(1), because Plaintiff Outdoor World's principal place of business is in the County of San Juan.

## III.   General Allegations

9.   Outdoor World incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

2

10. Outdoor World owns certain property, including the building and improvements therein located at 1234 Greene Street in Silverton, Colorado (hereinafter, "the Property").

11. Outdoor World insured the Property and its business pursuant to an insurance policy issued by Nationwide, which policy included insurance coverage on a replacement cost basis for the Property and loss of business income that was assigned Policy Number ACP BPRD7513532894, with effective dates of July 10, 2019 to July 10, 2020, and Policy Number ACP BPRD7523532894, with effective dates of July 10, 2020 to July 10, 2021 (hereinafter, "the Policies").

12. The Policies provided all risks coverage for the Property and business income loss, except as excluded or limited.

13. On or about December 21, 2019, a fire took place at the Great Divide building, which is immediately next door and to the south of the Outdoor World Building ("the Fire").

14. The Fire caused extensive burn, heat and smoke damage to the Great Divide Building, and also extensive heat and smoke damage to the Outdoor World Property.

15. The fire fighters that responded to the fire used hundreds of thousands of gallons of water to fight the Fire, which water caused damage to the Outdoor World Property.

16. Outdoor World made an insurance claim to Nationwide for the cost to remediate all of the fire damage to its Property and for its business income losses caused by and/or resulting from the Fire, which insurance benefits Nationwide paid.

17. In the summer and fall of 2020, the Fire damage to the Great Divide building was repaired, which included extensive demolition and reconstruction work on the south unreinforced masonry wall that is adjacent to the north wall of the Outdoor World Property.

18. Following completion of the repair and reconstruction work of the Fire damage at the Great Divide building, the repaired south wall came into contact with the north wall of the Outdoor World Property.

19. The south Great Divide wall is pushing against the north Outdoor World wall, causing direct physical loss to Outdoor World's north wall and other portions of the Outdoor World Property.

20. The pressure being applied by the Great Divide south wall against the Outdoor World north wall is so strong that racking and cracking of walls and ceilings of the Outdoor World Property has occurred and is continuing to occur.

21. The pressure from the Great Divide south wall is also being transmitted through the Outdoor World Property to the building to the south of the Outdoor World Property along Greene

3

Street, which is the "Ortega Building" at 1228 Greene Street, causing racking damage to that building too.

22. The contact between the two buildings caused by the south Great Divide wall pushing against the north Outdoor World wall was visually observed in July 2020, and was confirmed by a professional surveyor in a report dated August 19, 2020, which surveyor noted the north Great Divide wall to be leaning toward the south Outdoor World wall by 3.5 inches.

23. Outdoor World first tried in the early fall of 2020 to fix the cracks that had begun appearing in the new drywall in its second floor, but when the cracks reappeared, accompanied by new and larger cracks, which looked to be caused by external forces rather than typical aging of new drywall, Outdoor World hired a professional engineer, as well as sought the advice of its architect and contractor, to investigate and evaluate the situation.

24. In the fall of 2020, an engineer hired by Outdoor World measured the south Great Divide wall to be 1.5 inches out of plumb, leaning into the Outdoor World building, and calculated that the structural bearing capacity of Great Divide's south wall and accompanying roof support was grossly overstressed, well beyond the design loads for those items.

25. Due to concern about the life safety of anyone occupying the Outdoor World Property, whether living there on the second floor, or a worker or customer in Outdoor World's retail space on the first floor, Outdoor World did not reopen for business after its fire repair and reconstruction work was nearly completed in the fall of 2020.

26. These developments, including the recurring physical damage to the Outdoor World Property and the unsafe condition that caused Outdoor World to not reopen for business, prompted Outdoor World to file a new insurance claim with Nationwide in December 2020 for these losses and damage.

27. Nationwide hired a professional engineer, Michael Bohrer, P.E., to investigate the loss reported by Outdoor World, which engineer visited the site and investigated the cause and the loss.

28. This initial professional engineer hired by Nationwide (Mr. Bohrer) determined that Great Divide's newly installed roof support beams that were bolted directly into its south wall not only caused a downward force but also induced a moment which would cause rotation and outward pressure near the top of the wall, e.g., push the Great Divide's south wall into Outdoor World's north wall.

29. In his January 15, 2021 report, Mr. Bohrer concluded that the south wall of the Great Divide building is encroaching on the common property line and leaning into the north wall of the Outdoor World building; and that the condition of the south wall of the Great Divide building leaning into and applying pressure against the north wall of the Outdoor World building has caused ceiling and wall cracks to the second floor of the Outdoor World building.

30. At first, Nationwide accepted Mr. Bohrer's conclusions. This is evident when one of its adjusters notified Outdoor World that Mr. Bohrer's report "confirms what we have thought about the case that the issues in [Outdoor World] are from [the Great Divide], encroachments and construction, since the fire that is putting pressure on your walls"; and when Nationwide's subrogation attorney articulated the same position when making a demand on Great Divide's insurer, stating the Great Divide's "leaning wall which is causing property damage to [Outdoor World's] property".

31. After receiving Mr. Bohrer's January 15, 2020 report, which confirmed by opinions of Outdoor World's professional engineer, Outdoor World proceeded to have its engineer design a fix for Outdoor World's building and have its contractor prepare an estimate to implement that fix and to repair the cracking in Outdoor World Property. This estimate was for $701,800.

32. Shortly after Outdoor World provided the $701,800 repair cost estimate to Nationwide, Nationwide replaced the adjuster handling the claim (Jonathan Moe) with another adjuster (Adrian Filip), and also abandoned its original professional engineer, Mr. Bohrer, and hired a different professional engineer, Mr. Doru Botic, even though both engineers worked for the same company – ProNet Group.

33. In an effort to search for ways to deny Outdoor World's claim, Nationwide also insisted on having a geotechnical engineering investigation completed in spite of the lack of any facts that supported a finding that soil instability was the cause of the problem at either Outdoor World or Great Divide. This investigation further delayed Nationwide's handling of the claim.

34. Nationwide's geotechnical investigation confirmed what all experts local to the Silverton area had already informed Nationwide, soil movement was not the cause of the problems.

35. In spite of every other professional engineer and expert that has investigated the condition of the south Great Divide wall and north Outdoor World wall concluding that the south Great Divide wall is pushing into the Outdoor World wall which is causing the cracks seen inside the Outdoor World Property, Nationwide's second professional engineer, Mr. Botic, claims that walls are not in contact and the cracks in the walls of Outdoor World are merely cosmetic and not symptomatic of structural damage in the Outdoor World Property.

36. Based on Mr. Botic's lone opinion, Nationwide denied Outdoor World's insurance claim, except to pay for the cost to fix the obvious cracks in the drywall.

37. In a final effort to show Nationwide that Nationwide's reliance on Mr. Botic's opinion to deny its claim was and continues to be unreasonable, at great expense to itself – Outdoor World hired another professional engineer to further investigate and produce written reports of his evaluations.

38. This newly hired professional engineer, Brent Bell, P.E., coordinated two site inspections of the buildings, that included one invasive investigation and authoring of reports, which Nationwide and Mr. Botic attended, and which reports were provided to Nationwide.

39. The invasive investigations confirmed that the south Great Divide wall is indeed in contact with at least portions of the north Outdoor World wall.

40. Mr. Bell observed the south Great Divide wall to be 2.5 inches out of plumb, leaning into the second floor space of the Outdoor World.

41. Mr. Bell's engineering calculations, as set forth in his January 17, 2022 report, confirm that the south Great Divide wall is grossly overstressed, which has caused the upper portion of that wall to "hinge" outward and push against the upper portion of the north Outdoor World wall, and this pressure has caused structural damage at the Outdoor World Property, and a life safety danger for anyone in the Outdoor World Property.

42. It is now known that the contractor used by the Great Divide owners to repair and reconstruct the Fire damage failed to follow several of the design engineer's requirements, which allowed pressures greater than designed to be placed against and onto the south Great Divide wall.

43. Mr. Bell's January 17, 2022 report, with his attached calculations, photographs and graphs, was provided to Nationwide as one final effort by Outdoor World to pay the benefits owed under the Policies for the direct physical loss and damage.

44. Nationwide has continued to deny that any further benefits are owed under the Policies.

45. Outdoor World has satisfied all conditions precedent to making its claim for the repair cost for the losses and damages at the Outdoor World Property and business income losses.

46. Nationwide's denial of Outdoor World's claim is improper and without a reasonable basis, including because:

   a. The Outdoor World Property has suffered directly physical loss and damage;

   b. The cause of the directly physical loss and damage is a covered cause of loss under the Policies;

   c. There are no applicable exclusions;

   d. The physical evidence and reasonable expert opinions all support the conclusion that the Outdoor World Property has suffered and continues to suffer direct physical loss or damage, and that the ongoing life safety hazard that exists makes it unsafe to open to the public the retail space on the first floor and to use the second floor as a living space.

47. Outdoor World has been forced to hire legal counsel to assist it in obtaining the benefits owed under the Policies

6

48. Nationwide owes to Outdoor World the replacement cost benefits provided in the Policies for the repair cost and for loss of business income.

49. Nationwide's failure to timely pay the benefits owed to Outdoor World under the Policies has caused an ongoing loss of business income to Outdoor World, and other consequential damages and losses.

## IV. First Claim for Relief
(Breach of Contract)

50. Outdoor World incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

51. The Policies are a contract under which Nationwide agreed to pay, on a replacement cost basis, for direct physical loss and damage caused by a covered cause of loss at the Outdoor World Property, and for loss of business income caused by such direct physical loss or damage.

52. The Outdoor World Property suffered direct physical loss and/or damage as a result of a covered cause of loss, as described above, and has suffered a loss of business income as a result thereof.

53. Nationwide breached the Policies by failing to pay and/or failing to pay the full amount owed for the repairs of the direct physical loss and damage at the Outdoor World Property, and for the resulting loss of business income.

## V. Second Claim for Relief
(Statutory Delay/Denial; Violation of C.R.S. §§ 10-3-1115 & 1116)

54. Outdoor World incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

55. Outdoor World is a "first-party claimant", as defined in C.R.S. § 10-3-1115.

56. Under the Policies, Nationwide owes benefits to Outdoor World for the repairs of the direct physical loss and damage to the Outdoor World Property, and for the loss of business income as a result of the directly physical loss and damage.

57. Nationwide has unreasonably failed to pay the benefits owed to Outdoor World and has unreasonably denied and/or ignored its obligation to pay the benefits owed to Outdoor World, without a reasonable basis.

58. Nationwide's failure to pay to Outdoor World the benefits owed under the Policies violates C.R.S. § 10-3-1115, thereby entitling Outdoor World to the remedies included in C.R.S. §10-3-1116, including two times the covered benefit, costs and attorney's fees.

## VI.     Third Claim for Relief
(Common Law Bad Faith)

59.     Outdoor World incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

60.     Nationwide owes and continues to owe its policyholder, Outdoor World, the duty of good faith and fair dealing when investigating, evaluating and paying for the damages and losses suffered as a result of the direct physical loss and damage to the Outdoor World Property described above, including Outdoor World's repair costs and loss of business income.

61.     Nationwide breached and continues to breach this duty by, among other things, engaging in one of more of the following acts, some of which are considered Unfair Claim Settlement Practices pursuant to C.R.S. §10-3-1104(1)(h):

a.     unreasonably failing to pay Outdoor World's claim;

b.     unreasonably failing to properly construe the Policies;

c.     unreasonably failing to make payments in a reasonable and timely manner;

d.     misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue [C.R.S. §10-3-1104(1)(h)(I)];

e.     failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policies [C.R.S. §10-3-1104(1)(h)(II)];

f.     failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies [C.R.S. §10-3-1104(1)(h)(III)];

g.     refusing to pay claims without conducting a reasonable investigation based upon all available information [C.R.S. §10-3-1104(1)(h)(IV)];

h.     not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear [C.R.S. §10-3-1104(1)(h)(VI)];

i.     compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds [C.R.S. §10-3-1104(1)(h)(VII)];

j.     failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement [C.R.S. §10-3-1104(1)(h)(XIV)];

k. failing to act reasonably in the adjustment and resolution of Outdoor World's claim, when Nationwide was aware or should have been aware of its negligence;

l. failing to comply with reasonable standards in connection with the investigation, resolution, and adjustment of Outdoor World's claim;

m. unreasonably denying or failing to affirm coverage for Outdoor World's claim within a reasonable time after investigation;

n. ignoring reasonably available facts, including without limitation, the inapplicability of exclusions to the claims and inaccurate statements regarding the roofs and damage to them; and,

o. relying on a standard that is not found in the Policies to deny Outdoor World's claims.

62. Nationwide's breach of the duty of good faith and fair dealing was unreasonable and was action taken by Nationwide either knowing it was unreasonable, or in reckless disregard of the fact its action was unreasonable.

63. Nationwide's breach of the duty of good faith and fair dealing has caused Outdoor World damages, including loss of funds, delays in making repairs, loss of business income, and other losses and damages.

64. Nationwide's actions were willful, wanton and in reckless disregard for the rights and feelings of Outdoor World.

**WHEREFORE**, Outdoor World prays this Honorable Court to:

1. Enter judgment in favor of Outdoor World and against Nationwide for its losses and damages resulting from Nationwide's failure to honor the terms of the Policies and Colorado law; for its attorney's fees; and, for other bad faith damages;

2. Award the remedies provided in C.R.S. § 10-3-1116(1), including the actual damages of two times the amount of the covered benefit, plus attorney's fees and costs;

3. Award prejudgment and post-judgment interest and costs; and

4. Award such other and further relief as this Court deems just and proper.

9

## JURY DEMAND

**OUTDOOR WORLD DEMANDS A TRIAL BY A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 31st day of March 2022.

                                          **BURG SIMPSON**
                                          **ELDREDGE HERSH & JARDINE, P.C.**
*(Original signed copy on file at the law offices of Burg Simpson Eldredge Hersh & Jardine, P.C.)*


*/s/ Thomas W. Henderson*
Thomas W. Henderson, Reg. No. 16892
Nelson P. Boyle, Reg. No. 39525

ATTORNEYS FOR PLAINTIFF

<u>Plaintiff's Address</u>:
1234 Greene Street
Silverton, CO 881433

10