IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01137-CNS-NRN

SAN JUAN ASSOCIATES, OUTDOOR WORLD, LLLP,

Plaintiff,

v.

DEPOSITORS INSURANCE COMPANY,

Defendant.

---

**ORDER ON DISCOVERY DISPUTE
REGARDING REDACTIONS TO INSURER'S CLAIM FILES**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before the Court on a discovery dispute.

This is an insurance bad faith case. Plaintiff San Juan Associates, Outdoor World, LLLP ("Outdoor World") is the insured. Depositors Insurance Company ("Nationwide") is the defendant insurer.

**Background**

The case arises from a fire that occurred next door to Outdoor World's building in Silverton, Colorado. Outdoor World has been in business selling sporting goods in Silverton, Colorado since 1974. The second floor of the Outdoor World building has been used as a residence since the building was constructed in 1972. On December 21, 2019, a fire at the Great Divide building next door to Outdoor World caused significant damage to the Outdoor World building and the inventory inside. This prompted Outdoor World to file a claim with its insurer, Nationwide.

As Outdoor World was nearing completion of the repairs from the fire damage, the repairs to the adjacent Great Divide building were also progressing. It is alleged that the south wall of the Great Divide, an unreinforced masonry wall, was leaning into and damaging the adjacent north wall of Outdoor World, causing cracking of the newly installed drywall walls and some ceilings at the second floor of Outdoor World. This new damage led to Outdoor World filing a second claim with Nationwide.

Nationwide has apparently denied the second claim by Outdoor World and Outdoor World alleges that this denial has prevented it from making the necessary repairs to safely reopen for business. It is also alleged that the inappropriate denial prevented the second floor of Outdoor World from being safely used as a residence.

### The Dispute

In this discovery dispute, Outdoor World seeks disclosure of the entirety of Nationwide's claim files. Outdoor World says that the claim files produced by Nationwide are heavily redacted and that either there is no basis for the redactions or the privilege log that Nationwide produced fails to provide enough information to justify the redactions.

The Court briefly heard argument from the Parties on September 29, 2023. *See* Dkt. #79. The Joint Discovery Dispute Statement outlining the Parties' respective positions is found at Dkt. #79-1. Nationwide's Second Amended Privilege/Redaction Log (31 pages long) is found at Dkt. #79-2. At my request, Nationwide submitted, under restriction, an unredacted version of the disputed claim files for my review. The unredacted claim file for Claim No. 017274-GK (the fire damage claim) is found at Dkt.

2

#78-1 and the unredacted claim file for Claim No. 486184-GL (leaning wall causing cracks) is found at Dkt. #78-2.

The dispute essentially comes down to three things. First is whether information about subrogation is properly redacted from the claim files. Second is whether reinsurance information, including reinsurance underwriting, is properly redacted from the claim files. And third is whether allegedly attorney-client privileged communications are properly redacted from the claim files. A number of the redacted portions of the notes are supposedly "duplicative claim notes" which Nationwide says are literally word-for-word duplicative, and therefore need not be produced. The files at issue are fairly extensive. Dkt #78-1 (the file for Claim No. 017274-GK) is 356 pages. Dkt. #78-2 (the file for Claim No. 486184-GL) is 205 pages.

**Subrogation, Reinsurance, Underwriting, and Duplicative Claim Notes**

On the issue of subrogation, the "Privilege/Redaction Invoked" justification given by Nationwide is as follows: "Not relevant to any party's claims or defenses and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)." *See* Dkt. #79-2 at 2–3. Nationwide asserts that there is no relevance to the subrogation file in the first claim and any supposed relevance of subrogation evidence "appears to be nothing more than pure conjecture and surmise, also known as a fishing expedition." Dkt. #79-1 at 9. Nationwide makes the same argument for references to underwriting in the files: "Plaintiff has not articulated an iota of potentially relevant evidence in the underwriting files which are created and maintained irrespective of any claims decision." *Id.* The same argument is made to justify the redaction of any and all references to "reinsurance" in the claim file.

3

I think Nationwide misses the point. Unless covered by the attorney-client privilege or work-product doctrine, Outdoor World is entitled to production of the claim files for the two claims in this case. The claim files are obviously relevant. The claim files are extensive. To the extent that there might be some non-privileged, arguably irrelevant information intermixed with an otherwise relevant claim file, it does not give Nationwide license to go through and redact from an otherwise relevant and important document those discrete entries that Nationwide (in its own judgment) deems to be irrelevant. Doing so results in the production of significantly blacked-out sections of an otherwise relevant document, which creates unnecessary suspicion on the part of the insured and extra work—both for the party doing the redactions and for the Court when the inevitable discovery dispute arises.

Per Rule 34(b)(2)(E)(i), documents are to be produced "as they are kept in the usual course of business." If Nationwide, in its otherwise discoverable claim files, includes interspersed references to subrogation, reinsurance, or underwriting, and there is no privilege attaching to that information, then it should not be redacted from the claim file. The claim files need to be produced in their entirety as maintained in the regular course of business (barring privileged information). If Nationwide wants to create a separate underwriting or subrogation file in its business record-keeping system and keep those files segregated from the claim file, then it would be entitled to do so, and production of the claim file (reflecting adjustment of the claim for the insured) would not otherwise implicate the production of those materials. But it is not appropriate for Nationwide to parse through an otherwise producible claim file and redact discrete

4

references to subrogation, reinsurance, or underwriting on the grounds of lack of relevance.

In addition, it seems that many of the "relevance" redactions were done without any exercise of rational judgment. For example, with respect to subrogation, it appears that the redactions were merely the product of a word search for the word "subrogation," resulting in the redaction of any reference to the word, no matter the context. For example, on page DEP_000114, the claim note reflects a conversation with counsel for the insured, Mr. Bobby Duthie. The claim note in its entirety reads,

> spoke with Bobby Duthie
> 970-946-4545, went over the claim and his representation of our insured. Provided details on the claim and filled in gaps based on what he understood the loss was at. He is looking to get a global settlement with all parties involved on the claims for liability, first party, **subrogation**, etc... I advised that on this claim we would not be in a position currently to do a global settlement as we responded with our updated estimate and are trying to get an agreement on the final costs. Advised that I would send over our last email and are waiting on a response to that. ***He wanted to know about subrogation on this claim and I provided what occurred on the subrogation claim, I advised that I would speak with the subrogation adjuster.***
>
> -Jonathan Moe (03/08/2021 2:20 PM)

Dkt. #78-1at 9 (DP_000114) (emphasis added). In the redacted and produced version of this particular note, the word "*subrogation*" in the fourth line, and the last sentence, "*He wanted to know about subrogation on this claim and I provided what occurred on the subrogation claim, I advised that I would speak with the subrogation adjuster,*" were redacted.

These redactions are, to put it quite simply, absurd. Obviously, counsel for the insured was interested in a global settlement, including settlement of any subrogation claim. But to redact from the claim file a reference to "subrogation" in a communication

5

with counsel for the insured make no sense at all. Indeed, the presence of this type of non-sensical redaction in 500 pages of claim files with dozens and dozens (if not hundreds) of redactions, brings to mind the statement about the "thirteen stroke of a clock at midnight" that calls into question not only itself, but everything that has come before. *See Munyenyezi v. United States*, 989 F.3d 161, 1691–70 (1st Cir. 2021) (explaining that a jury may have viewed a certain lie in testimony "as the thirteenth stroke of Thomas Hardy's crazy clock: 'It was not only received with utter incredulity as regarded itself, but threw a doubt on all assurances that had preceded it.' Thomas Hardy, *Far from the Madding Crowd* 209–10 (First Vintage Classics ed. 2015)"); *In re United Merchants and Mfrs., Inc.*, 3 B.R. 286, 299 (S.D.N.Y. 1980) ("very like the thirteen stroke of a clock, which raises serious doubts as the reliability of the first twelve strokes") (quotation omitted).

Another example of an inappropriate redaction supposedly due to irrelevant "subrogation" information is the entry on DEP_000115–116. Under the heading of "SUBROGATION" is an entry for February 10, 2021 that reads,

> "Do we need to reopen the subro review on this additonal damage from the neighbors poorly repaired exterior wall? Also is this now a known loss that will continue if the neighbor doesn't repair the wall correctly and at what point do we say no to future losses resulting from this problem if they continue to happen?"

Dkt. #78-1at 11 (DEP_000116). This was entirely redacted from production. Not only is this not a privileged communication for which there is no basis for redaction, it also shows some of the thinking by the Nationwide adjuster(s) about the wall collapse claim and Nationwide's anticipated decision to say, "no to future losses." Thus, this note gives

6

lie to Nationwide's argument that references to subrogation in the claim file have no relevance to the disputed issues in this case.

Yet another example of an entirely inappropriate redaction is found at DEP_000169 (*id.* at 64) where there is a detailed explanation of the decision not to pursue subrogation, the difficulty that Nationwide was having in getting its expert into the adjacent building to perform an inspection, and the fact that the "cause of the loss is currently undetermined." This recitation is arguably relevant to show Nationwide's knowledge of the circumstances of these buildings, including the weather, the importance of the tourist season, and the climate challenges of the Silverton environment. Yet, it was redacted for no legitimate reason.

In sum, the Court finds no basis for redacting from the disputed claim files references to subrogation, underwriting, or reinsurance. Absent some kind of privilege, lack of relevance is not a basis for redacting limited portions of an otherwise relevant and responsive document.

The same could be said for supposed "duplicative" claim notes. If the notes are duplicative of notes that are being produced, then JUST PRODUCE THEM! It is difficult to understand why anybody is spending the time and money to have a law clerk or paralegal redact notes that are duplicative of things that are being produced already. The redaction of duplicative information that is not privileged and is already being produced creates uncertainty, undue suspicion, and unnecessary discovery disputes.

The Court notes that certain of the subrogation-related redactions relate to the retention of counsel, Cozen O'Connor. Notes that merely reflect the retention of counsel are not attorney-client privileged. The only things that are attorney-client privileged are

communications to or from counsel for the purpose of seeking or providing legal advice. These notes appear to be overly redacted. *See, e.g.,* Dkt. #79-2 at 2 (reflecting redactions because of "Subrogation in Claim No. 017274-GK and retention of counsel").

On the issue of reserves—Nationwide says it redacted reserves information in Claim No. 017274-GK. *See* Dkt. 79-2 at 2. But in this District, the consensus appears to be that, in an insurance bad faith case, evidence of reserves information is potentially relevant to an insurer's good faith or bad faith conduct and is therefore discoverable. *See Anderson v. Mt. States Mut. Cas. Co.*, No. 15-cv-01316-RM-NYW, 2016 U.S. Dist. LEXIS 56733, at *6–7 (D. Colo. Apr. 28, 2016) (holding that, in light of bad faith allegations, the plaintiff "should be permitted to discover information, currently withheld, that reflects the [d]efendant's reserves and settlement authority relevant and proportional to [p]laintiff's asserted bad faith claim"); *Colo. Mills, LLC v. Phila. Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *8 (D. Colo. Apr. 2, 2013) (in bad faith case, finding that reserve information may be relevant for the purposes set forth in *Sunahara* and *Silva* and concluding the reserve information dated prior to a specific date "is relevant and discoverable"); *Larson v. One Beacon Ins. Co.*, No. 12-cv-03150-MSK-KLM, 2013 WL 2477150, at *4 (D. Colo. June 10, 2013) (granting plaintiff's motion to compel discovery of insurance reserves information); *Seabron v. Am. Fam. Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1158 (D. Colo 2012) (ordering that previously redacted information about reserves and settlement authority should be produced, because "in a bad faith case, the evidence of reserves and settlement authority is directed at whether or not the insurer's actions toward its insureds were reasonable").

Whether information about reserves or settlement authority is ultimately admissible is an entirely different question. *See*, *e.g.*, *Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-00982-LTB-KLM, 2018 WL 3496735, at *8 (D. Colo. July 20, 2018) (finding that evidence of insurer's loss reserve would provide some relevancy, but the court would exclude that evidence from at trial "as the danger of unfair prejudice outweighs its potential relevancy to the issue of its reasonableness").  Admissibility will be decided at a later time.  For purposes of discovery, reserves information should not be redacted.

### Propriety of Attorney-Client Privilege Redactions

The Court has significant doubts about many of Nationwide's allegedly attorney-client privilege-based redactions as well. In its submission, Nationwide suggested that Outdoor World's request for an in camera review is too sweeping, and also that it is premature because Nationwide may well withdraw some of its redactions under what it interprets may be ordered under the reasoning of *Menapace v. Alaska National Insurance Co.*, 20-cv-00053-REB-STV, 2020 WL 6119962 (D. Colo. Oct. 15, 2020). In *Menapace*, my colleague Magistrate Judge Scott T. Varholak did a deep dive into when an attorney's involvement or communication with an insurance adjuster might constitute actual adjustment of a claim rather than merely the giving of legal advice. As Judge Varholak explains in *Menapace*, numerous decisions applying Colorado law uniformly have held "that insurance companies cannot claim privilege when an attorney is acting as a claim adjuster, rather than counsel." 2020 WL 6119962, at *5 (citations omitted).

After summarizing a number of these decisions, Judge Varholak synthesized the various guiding principles as follows:

9

> These decisions thus stand for the proposition that, where an insurer utilizes an attorney to both handle claims adjusting activities and also to provide legal advice, the communications related to the claims handling functions (such as investigation, gathering and summarizing information, and valuation of the claim) are ordinary business activities of the insurance company typically handled by an adjuster or investigator and thus are not entitled to attorney client privilege. However, communications related to the actual provision of legal advice are still protected by the attorney-client privilege. These cases further make clear that, even where an attorney participates in claims adjusting activities to further their ability to offer legal advice (e.g., by investigating the factual basis for the claim), communications related to those claims adjusting activities still are not entitled to the protections of the attorney-client privilege.

*Id.* at *7. The bottom line is that, under *Menapace*, there must be a "document-by-document" approach to determining privilege. *Id.* at 10. Documents that contain communications made for the purpose of giving or receiving legal advice generally are privileged. So, if an insurer (or the insurer's adjuster) requests that an attorney provide advice addressing the applicable Colorado law or how courts have applied the law to facts similar to that presented by an insured's claim, such advice would be legal in nature. *Id.* "Upon receiving that advice, it is then Defendant's business decision how to apply it to determine the value of the [insured's] claim." *Id.*

Using these principles from *Menapace* as a guide, the Court has serious doubts as to the propriety of Nationwide's attorney-client privileged redactions.

As a most basic example, on the page listing "Parties Involved" in the claim, the name of "Cozen O'Connor" (a law firm) and the phone number is redacted. This is not a communication intended to seek or give legal advice. Someone, without any thought behind the process, decided to redact any mention of the Cozen O'Connor law firm. *See* Dkt. #78-1 at 3 (DEP_000108).

As another, more important example, DEP_000118 purports to reflect an attorney-client privileged call to discuss coverage. The privilege log entry cites as the reason for the redaction as "Communications to and from legal counsel in the course of gaining counsel, advice, and/or direction with respect to rights and obligations in Claim No. 017274-GK." *See* Dkt. #79-2 at 4. But a review of the actual redacted page of the relevant document (Dkt. #78-1 at 13) shows that this was a meeting "to review the engineer report re: causation of cracks post fire repair to PH property." It then mentions that something was "discussed." The substance of what was discussed is arguably appropriately redacted as a communication for the purpose of giving or receiving legal advice. But then, the following appears:

> Agreed
> New Loss
> New date of loss
> New cause of loss
> Damage is the cost to repair the cracks

This was redacted. Under *Menapace*, this was not an appropriate redaction. If it was "agreed" that this was a new loss and Nationwide has decided what the damage is, then this was part of the claim adjustment process. If a lawyer was involved in the "agreement," then so be it. But the ultimate decision about it being a "new loss" and the damage flowing from that loss is an adjustment issue, reflecting a business decision of the company, and should not be redacted.

I have not reviewed all the pages of the claim files and have not cross-checked all the claimed privileged redactions against the justifications in the privilege log. But I have reviewed enough to conclude that Nationwide has redacted the claim files at issue with an extremely broad brush, redacting any entry with a mention of a lawyer or law

11

firm, without consideration as to whether the entry actually reflects a communication for the purpose of getting or receiving legal advice. The principles articulated in the *Menapace* decision were not applied to the redaction process.

It needs to be redone. It should be done by counsel, not a paralegal or clerk. The lawyer doing the redaction needs to have read and become intimately familiar with the *Menapace* decision. Redaction of information in the claim file just because a lawyer may have been present in a meeting (or participated in a phone call) is not appropriate. Claim notes reflecting business decisions made after consultation with counsel should not be redacted. Claim notes reflecting the retention of counsel should not be redacted.

**Conclusion**

For the foregoing reasons, Defendant Nationwide, within 10 days from the date of this order, needs to revisit its redactions of the two claim files at issue in this case. It should remove the redactions based on subrogation, reinsurance, underwriting, duplicative claim notes, or reserves. It should also review and reevaluate any redactions based on attorney-client privilege or work product to make the redactions consistent with the rule articulated in the *Menapace* decision. A revised privilege log needs to be prepared so that every single redaction based on attorney-client privilege reflects to and by whom the communications was made, the date of the communication, and the general subject matter. In addition to preparing and serving on Outdoor World the new versions of the (presumably substantially unredacted) claim files and new privilege log, Nationwide shall include a sworn certification from a lawyer explaining that the lawyer has read the *Menapace* decision and the new redactions and privilege log are

12

consistent with the principles outlined in that case.

**SO ORDERED**

Date: October 24, 2023

_____
N. Reid Neureiter
United States Magistrate Judge